Case number 17-3128, Federal Labor Relations Authority v. Michigan Army National Guard. Oral argument not to receive 15 minutes per side. Mr. Walters is the respondent. You may proceed. Thank you, Your Honors, and may it please the Court. Tyce Walters for the Michigan Army National Guard. With the Court's permission, I'd like to reserve five minutes of time for rebuttal. All right. This case asks whether a federal civilian agency may second-guess a letter setting out procedures to govern technician termination hearings. The letter was addressed solely to a single individual who had traveled from out of town in Louisiana to represent the two technicians in the proceedings, and it expressly limited its directive to the subject matter of those proceedings. Congress answered that central question when it enacted Section 709F and provided that a state military commander, the Michigan Adjutant General, shall accomplish the discipline and discharge of military technicians. Congress further provided that no right of appeal which might exist with respect to that authority shall extend beyond the Adjutant General of the jurisdiction concerned. Those principles resolve this case. It might be helpful to begin by looking at the letter itself, which can be found at Appendix 85, and discuss all the ways that it does demonstrate that it is a regulation of termination proceedings. As I mentioned, the letter was addressed to a single individual, not to the union as a whole, not to any other union members who are normally at this base. And the person to whom it was addressed was a national official who had come to represent these two technicians in this adversarial termination hearing. Just to make sure I'm getting all of this, it's okay from your perspective for the union to represent them? Yes, Your Honor. Because in some military situations, that's not even an option. This is not one of them. In this case, you do allow unions to represent terminated employees. That is correct, Your Honor. My understanding is that the employees are permitted to choose whomever they would like to represent them. So what does the letter – does the letter mean that every time the terminated employees want to talk to Mr. Banks, the union representative, guard people have to be there? Every time that the terminated employees – no, Your Honor. That is a way you could read the letter. Read out of context, the letter could be understood that way, Your Honor. But for one thing, the letter – It says any and all communications with employees regarding this matter should be directed to this office. So they want to have a conversation with Mr. Banks about what happened and the facts and what the legal strategy should be. And the guard has to – so your view would be the guard did not have the right to do that,  The guard might have the right to do that, Your Honor. Really? They could prevent them from talking to the union representative without guard people being there? If this was legitimately – as you said, in some circumstances, for instance, they might not be entitled to have a union representative. That is not this case? That is not this case. Okay, so that is all we are worried about. Absolutely. So that might violate – were they to do that, that might violate the technician personnel regulations that govern these proceedings. But it wouldn't be actionable by authority because it would still fall within the Section 709F bar. That said, this letter – Let's just be clear here. If we read the letter or we think it's a fair reading of the letter that it bars the terminate employees from talking to banks without guard people there, that would be an unfair labor practice. No, Your Honor. No. Precisely because it would still – insofar as what that is doing is still trying to regulate the termination proceedings. That is authority that is committed to the adjutant general under Section 709F. Now, if that were – That suggests you really could exclude them from talking to the union. Exactly right, Your Honor. Wow. You could just write a letter saying we've got this agency thing going on. And in order for it to proceed properly, the union and its people that it represents won't talk to each other for the next month. So I think that the question – That's a hypothetical question. You could do that or not.  What if we were to assume that all of your jurisdictional arguments and so forth wouldn't keep the FLRA from stopping such a letter? That it wouldn't keep it from stopping such a letter? Yeah, a letter that just says, okay, during the process of this particular determination of whether we're going to fire this person, nobody in the union can talk to union representatives. Union-wide, there's 90 people or 900 people or however many people you have. You're – it sounds like you'd like that. No, Your Honor. And I think – I didn't want to concede that would necessarily be – That would clearly be something that the FLRA – I mean, these are – the scheme is set up so that the guard is in the nature of a federal employer. Well, I think what this court could say – That's why you're representing them. I think what this court would have open to say at that point was that that could not reasonably be understood as a regulation of the termination proceedings at that point. What that directive would be is – Well, that's in effect what the agency did here. They said this – to the extent that this is not a regulation of the termination proceeding, it's within our bailiwick, and we're saying you can't do it. We read it as being very broad, which is not a crazy reading. I mean, I can understand the counterargument, but, you know, there's language in there which looks like you can't talk. It looks like it even applies to the represented employee. You don't claim either, but it looks like that, right? So there's really two different issues there, Your Honor. The first is whether this can reasonably be understood as a regulation of the proceedings. And then second is if it is a regulation of the proceedings, is it broader than necessary to accomplish that? Did it – was it unduly interfering with union rights while being a legitimate regulation of the proceeding? We think, of course, if something is not reasonably understood as a regulation of the proceeding, it falls outside the Section 709F bar, and there would be no problem with the authority asserting jurisdiction over it. That appears to be how they read it. So you have to disagree with that reading in order for us to agree with you. And we emphatically disagree with that reading, Your Honor. Well, I understand, but they get to interpret it, don't they? Well, the authority does not get to interpret the scope of Section 709F. That is not a statute that is committed to them. No, I'm talking about reading this thing that's before them. Right. So you could say, well, in my extreme hypothetical, I made it extreme so that it could be extreme. Okay. Of course, Your Honor. In my extreme hypothetical, the agency could say, well, this is necessary for the administrative proceeding to proceed. Surely the FLRA has the ability to disagree with that. Of course, Your Honor. And we are not arguing for – If it's of course, then why aren't we just reviewing how – whether they properly disagreed with that or not? And, of course, I'm happy to discuss all the ways that the letter can only properly be read as a regulation of the termination proceedings. But, again, I think that the right test for this Court is just could this reasonably be understood as a regulation of – Just to clarify something, I think Judge Rogers was asking, but just so we're all on the same page, is there deference in how the letter is read? Or do we defer to you?  How does that work? To the extent that what is happening – that there is a factual determination, that would, of course, under standard rules of deference, some deference would be granted to the authority. Well, might you call this a fact determination? How to read words in a letter? Exactly, Your Honor. I think that one – the question is whether a written instrument falls within the scope of a statute as to which the authority is not granted deference. I don't think that there is a great deal of deference that should be granted to the authority. And to the contrary, I think a certain amount of breathing room – Absolutely. So, it is addressed, as I said, only to the individual who is representing the technicians. It expressly ties itself to the subject matter of the termination proceedings and says that communications are only improper until the administrative hearing examiner, who is overseeing those proceedings, is appointed. And that's particularly relevant, Your Honors, because the technician personnel regulation, TPR 752-1, commits disputes as to the availability of witnesses to the hearing examiner. So, all that this letter is doing is asking the representative of these two technicians to not contact witnesses ex parte until the individual who is charged with making those determinations is appointed. It's limited. It's tied to – How long is that? Is that a week, two weeks, a month? In this case, I think the hearing examiner was appointed a month to two months later. And I do think, regarding the idea that this was prohibiting contact with the terminated technicians themselves, that's just not a fair reading. It begins by discussing the hearing requested by your clients. What this is intended to do is something akin to, in civil litigation, forbidding counsel from an opponent from speaking with your employees. That's an interesting point, that it says client first and then it's employees later. So, that suggests when they wanted to be specific, they used client. Exactly. And again, these employees were in the midst of – these two technicians were in the midst of termination proceedings. This isn't the standard employee of the guard to whom they are referring to later in the letter. If the Court has – Oh, I have another question. Let's say that we were to write an opinion, for instance, hypothetical. I'm not promising or threatening or anything. That we were to write an opinion that said, if this thing could be read as you just described it in a very nicely typed – and if we said – it's hard for us to imagine how that could be challenged under the FLRA. But we read it as much broader and as such, it was a violation. Wouldn't that totally serve your client's interests? All they have to do is be careful when they write the next letter. I think that would get us most of the way there, Your Honor. How far would it not get you all of the way, other than that you have to post something saying we were wrong, which who cares? So, a few things. The first is the cease and desist letter in this particular case is very broad. It prohibits us from – We could narrow that, too. That would certainly, again, go a little bit farther. And then the last thing is that – Just be precise about the cease and desist letter that you think is overbroad. Absolutely. The way Judge Rogers just framed it. Absolutely, Your Honor. The exact language is that it prohibits all communication – that the Guard is not able to prohibit private communications between bargaining unit employees and their union representatives. So, for instance, that would prevent even the most – Oh, talking about the witnesses. Right, exactly. Even the most targeted ban on improper ex parte witness contact would fall under that. Or at least it could be so read, Your Honor. If we clarify that, that's a victory for you. That would, as I said, be certainly helpful. Poor Captain Bedell's will be criticized a little bit, but that's it. The one other aspect that's very important, though, is that once this court suggests that the authority can criticize an overbroad regulation that is acknowledged to be an attempt at regulation, that the floodgates will be open, that there is nothing to stop unions or, for that matter, the individual technicians who are unhappy with the way the termination proceedings are going from filing unfair labor practice after unfair labor practice. All we have to do is preserve the ability to overturn something that is as broad as this FLRA found this one to be. That would go quite a long way, Your Honor, I think. Is there any farther to go to serve your honor? I don't see how your interest is – why you would even care about that. As long as the court were to preserve appropriate breathing room for the action in general. Sounds like you are amenable to having the court rewrite your letter. That's not our function to do that, is it? Well, Your Honor, obviously this would need to be – if the court were to do something like that, it would need to be remanded to the agency in the first instance to clarify or the authority. I think there's a little communication gap going on here. We started with the letter, but I think what was being discussed at the end was the court correcting the order itself, not the letter. And that's not so much rewriting it as invalidating part of it. Or as part of the relief. Part of the relief. Make sure we're all communicating. I think that's exactly right, Your Honor, that this court would tailor what we consider to be very overbroad relief ordered by the authority. But again, it would be important to preserve the breathing room for the action in general and to make clear that a bona fide regulation of proceedings. I'm a little confused by your argument because the history of the case indicates that your client had previously refused to narrow the letter. And now in court you're talking about all kinds of things that would do the opposite. So it's like your position on this is sort of a moving target, which perhaps it wouldn't be if we just looked at what the letter said and went by the dictates of the language. And I think the dictates of the language, fairly read, are not nearly as broad as the authority construed it to be. So to the extent that what this court is doing is correcting the authority's overbroad interpretation of the letter. So you'd like the court to correct the letters, what you're saying? No, Your Honor. I'm not trying to recapture or restate Judge Rogers' question. I'm asking a separate question. No, Your Honor. We're not asking you to recharacterize the letter. The letter, as fairly read, as I said, is clearly a regulation of termination proceedings and is concerned with preserving the integrity. Okay. Thank you, Your Honor. Thank you. I wouldn't such a result be perfectly happy for you as well. Perfectly happy. That the broad reading would be rejected, right? And you claim it's a broad reading and we would be affirming the rejection of the broad reading. It's a broad letter. I don't think this needs to be. I'm not talking about the letter. I'm talking about, well, yeah, I am, I guess. Or the order. It's a broad letter. It's a broad letter. We agreed with you that it could be read as very broad under the substantial evidence review. And we said as very broad is properly overturned. But if it were narrow, it doesn't look like there would be a problem with it. How is that a problem? Well, just to complete the question and that the order would be revised to make sure it doesn't interfere with the sequestration of witnesses problem. So I think Judge Rogers needs to be happy with that. Yeah, at least preserve that, yes. No, I have a problem with that, Your Honor. Yeah, because you're trying to get more. Not more. Just to say that this letter is overbroad. This is a snapshot in time where we're looking at a letter that reached far beyond a skipped counsel. We're assuming that we're going to read it under a substantial evidence review. It's just a hypothetical. We're not promising anything. Assuming that we did that, why do you need more? I mean, why do you need more than an affirmance of a finding to be illegal of a letter that is the letter as you read it? An affirmance of that would be fine, Your Honor. Well, that's what I was... With the qualification that... But if it were narrower, we're not saying that. Of course, of course. Okay? Because what's narrower is not before us. So they get to write their narrow letter. You get the rejection of the broad letter. Everybody... I don't understand. Really, when I read these briefs, I was exasperated. It was like each person was trying to... each side is trying to characterize the letter in other terms so that they can attack it. What revised... If you are agreeing, what revised wording of the letter are you agreeing to? I'm... I'm... These hypotheticals that don't have any statement of language is difficult to go by. So what exactly would you be agreeing to here if you're agreeing to anything? Obviously, Your Honor, I can't speak for the authority to different facts in the situation. That's for them to determine. And that's why if the court feels that sometime down the road, and I have no problem with the guard changing the way it deals with these types of matters, where they say, Union, if you're going to talk to a supervisor perhaps, you need to talk to us first or let us be available. The order goes to the bargaining unit employees. And that's exactly what the letter says. You can't talk to any of these employees. I just want to be clear so that my question jibes with Judge Clay's concern. I'm not talking about changing the letter at all. What I'm talking about is changing the relief that's ordered. And part of the relief that's ordered is you have to post something saying we did something wrong. And if you say the thing that we did wrong was to order certain things, even though it's questionable whether this letter orders them, we can say we read it as very broad because that's the way the agency read it and we're under substantial evidence review, which you can't disagree with because that's what you're arguing. All right? You say we read it as very broad. These arguments don't, the other side's arguments don't work. And we're affirming this, but we're saying nothing about something that would be narrower along the lines of the way they read it. And the way they read it, either we're saying nothing or we have no problem with that or something that's, you know, an inference. I mean, we can't, it's dictum, I guess, but we can send a signal that that's not what we're saying. And that's what they're concerned about. Right? So we could rule, we could be careful about what we rule that ought to be perfectly acceptable to the interests of both sides. It's just that one of them would have to go back sheepishly and say we lost. But, you know, I mean, but other than that, everybody's interest is furthered, right? Just to be clear, that bit of dictum saying, in another situation this might be a completely different case, I have no problem with that. So I want to make sure that I'm not misunderstanding you when we're talking about the authority's relief. Because we want that to stand, and I would argue that something about that should stand. Well, I mean, it stands, but it stands based on the broad reading. Of course. Right. Yeah. But let me, maybe this is a way to get at that point, just to make sure I understand your position. Let's not have the letter come from the captain. Let's have the letter come from the hearing officer. Okay? So just all that's going on is we have a hearing officer. He learns that Mr. Banks is representing the two employees. He sends a letter that says, okay, we're going to have a hearing in two months. We have some procedures about talking to witnesses. And the way we like to do this is please don't talk to, please don't have your clients talking to witnesses until the guard's ready for that. And the way it works is when the guard talks to witnesses, you're allowed to be there. And when you talk to them, they're allowed to be there. Would that be okay? If the hearing examiner were making these calls about the proceeding. No, no. So it came from the hearing examiner. That's what he did. Okay. That would be okay? That is a completely different scenario, Your Honor. I know. I get it. I get it. So you are allowed to monitor employees talking to other employees, which is another way of saying talking to witnesses. If it goes directly to that termination proceeding, where the inputs, as the guard describes in their brief, could actually affect the outcome, that's a different case that we are not trying to challenge. Okay. So all that really differed was I had the hearing examiner issue the letter. Now let's just say Captain Bedell's issues the same letter. It's very careful. It says talking to witnesses. That also would be okay. I don't know if it's just talking to witnesses. And if it's just coming from a supervisor, Captain Bedell, agency representative, as it does here, two months before a hearing examiner has even been appointed to the case, again, that can be read very broadly where . . . No, no, but I'm just saying the letter is clear. The letter is clear about talking to witnesses about this termination. Isn't that okay? Isn't that okay for them to regulate that? I think that might be too broad, Your Honor. Really? Well, just tell me why. We're talking about potential witnesses in a case where the proceeding hasn't started. In this situation, the facts of the case, we had a major investigation involving theft, moonlighting, nepotism, destruction of government property. Right. The breadth of employees that could be touched by that is very broad. And if you have questions . . . No, no, but I'm not saying talking to any employees about the termination or the events leading to the termination. I can't understand why they're not allowed to do that. Shouldn't they be able to talk about a termination to the union? Say it again? I'm confused. If you're saying that bargaining union employees can't talk to the union representative about a termination? No, no, no. The people terminating can talk to them. Sure. So you're clarifying that. There's no suggestion they can't use you, the union. Right. But I guess I'm trying to understand their position seems legit, that you should be allowed to regulate how people talk about the events leading to the termination. That seems fair game in regulating the termination proceedings. I think if the hearing officer is doing that, if the regulations describe that, that's not what the regulations describe. 75.2-1 describes exchanging witness lists. It describes making witnesses available. It describes the hearing officer making relevancy determinations, making sure witnesses are available and making sure there aren't duplicate witnesses. It doesn't talk about stopping witnesses from talking to their representative or talking about potential witnesses that might have information in the case. The bottom line is you want the employees, even employees that were witnesses to the event, to be able to talk to the union representative outside the guards' presence and outside the guards' or the hearing examiner's regulation of how that happens. I think that there's – I'm having a hard time seeing in their civilian capacity, which is what they're in here, where witnesses that would have information relevant to the case couldn't talk to the union representative as they do the investigation. About the case. About the case. If you look at the regulation, the guards' regulation 75.2, and I believe it's Chapter 5 when the guard issues its proposed letter, it specifically gives employees those rights. You want to – oh, I'm sorry. Go ahead. Counsel, before we twist ourselves into a pretzel trying to figure out how to rewrite the order, I want to understand one thing. What's before us is a request to grant application of the Federal Labor Relations Authority to enforce the order. That's what's before us, right? That's right. I don't see how the court has jurisdiction to revise or rewrite the order. Our judicial authority here is limited to enforcing the order or not enforcing the order. Am I wrong about that? No, you're not, Your Honor. Thank you. If the court had a problem with the order, and again, I just want to move back and outside of the hypotheticals, where we've got an order that goes well beyond just the witnesses. It talks about employees in their off time talking, having any kind of information that they have a concern about these events that are taking place. The letters can be read so broadly. The authority should very clearly be deferred to in looking at this matter and applying the statute. I'm trying to get at whether you'd be happy with the position that they're now taking. I guess that's what I'm trying to get at, and I'm taking it that you're not, because even the limited order that they're saying this is would prohibit witnesses from talking to the representative for this short period, and you think that even witnesses should be able to talk. I'm drawing a distinction between the people you describe who just heard something was going on and expressed angst. I think this is my concern, Your Honor, and again, I'm not— I'm just asking what your position is. You would say that they couldn't even limit access to witnesses. What if the guard were—and I apologize to ask the question on the hypothetical. Yeah, I'd rather have an answer. In order to really open up the witness list to every bargaining unit employee. But that's manipulation. Well, I agree, and right now the letter reads that broadly. Although we narrowed the space between you, we haven't completely eliminated it. I just want to be careful about what that different letter looks like and how the authority might read that, and I want to save that for another day. Another letter, I'm not saying there isn't a letter that could very carefully and narrowly tailor the needs of the guard to preserve the information that's getting to the hearing officer, and again, we're not taking issue with the termination. The victim is not holding. We can just say we are not holding, and you can argue it later. I have no problem with that, Your Honor. Okay. Are there any other questions? Apparently not. Well, when we ask it, you enforce the authority's order. Thank you. Just three very brief points, Your Honor. First, just as a factual matter, it's important to note that this letter was not written just by a supervisor. It was written by the prosecuting attorney in the case, so it was essentially written by the prosecutor to someone who functions like a defense attorney. Why does that matter as to who wrote it? You're standing behind the letter, and the letter's not in dispute. What does that have to do with anything? Well, it more clearly shows that it is akin to Judge Sutton's hypothetical earlier that there had not yet been a hearing examiner. This was not just a supervisor talking to all union representatives saying don't speak with employees. This was a prosecuting attorney addressing a letter not to the union as a whole, but only to the single individual representing these employees. Is it even in the record below specifically as to who the individual was who wrote it? Yes. Yes, Your Honor. That was Captain Bedell's, who was the prosecuting attorney, and that is in the record. And the second point, Your Honor, is that I just want to flag the danger that is illustrated by the discussion that has just been happening, which is that every time, the next time the guard issues a letter setting out even the very narrowly tailored directive that Judge Sutton referred to, there will be another unfair labor practice. And what we will have is interference with the authority deciding when a regulation sweeps too broadly. All you have to do is go into court and make the same kind of defenses that you're making now, and I can't promise you'll probably win, but you've got a real weak defense. But the point, Your Honor, is that Congress didn't want us to have to go into court and make these defenses when it said that the — They created the FLRA and made them a federal employee. It did, but every court has made very clear that Section 709F trumps that act and that the accomplishment of termination proceedings is committed to the unreviewable discretion of the adjutant general, merely having a discussion as to whether the procedures were appropriate. Can you explain? I mean, you heard Mr. Henage. You heard him, what his concerns were. You really think there's not a way to do this? I mean, you really don't think there's a way to write these letters that protects your interests and that they will respect? Because I thought he was getting pretty close to saying our main concern is the one that it's manipulation. They write it in a way that it covers all employees about everything. He can speak for himself, but I thought he was acknowledging the point that you do have a right to talk about the witnesses to the incident and have rules about when they talk to folks without the guard there. I mean, you don't think this can be done? The one thing that I'm just very worried about, the idea that these can, by the way, be filed not only by the union, but by individual technicians, that any technician can say, oh, I don't like this letter or the proceeding. I don't like the way the hearing examiner did this. This is now an unfair labor practice. And then there is a multiyear court process for something that is supposed to be within the military chain of command, committed to the discretion of the states, and suddenly the idea that this is committed to the discretion of the adjutant general. Well, I mean, I guess I'm probably where Judge Rogers is on this point. I mean, now is not the time to be making that argument. The letter is really broadly written, right? Make that argument at a time when you're writing a pretty careful letter, and if they're being abusive, I think if I'm on the panel, I'll be very receptive to that point because I agree with you. That would really undermine the whole scheme. But this is a case without that letter. We're kind of stuck. One other minor factual point, Your Honor. I did want to point out that, as my colleague mentioned, that this was an issue where there was widespread allegations of theft and moonlighting on the base. So in this case, the employees will in many cases be synonymous with witnesses and possible defendants. This is not. The fact that it was extended to entire employees of the bargaining unit was not just an attempt to reach as broad a scope as possible. It's because there were significant problems stretching throughout the base. But as I said, Your Honor, our primary concern is, of course, with ensuring that when Congress said that these procedures shall be accomplished by the Michigan adjutant general and that no appeal shall lie from that, that there is a reasonable amount of breathing room for the adjutant general's determinations as to how those proceedings will be. Can you tell me on a point on criminal law generally? I'm embarrassed I don't know this. So you have an indictment and you have a defense attorney. Are there rules that limit the defense attorney in talking to witnesses and tracking down people without the prosecuting attorney there? They're allowed to do that, aren't they? My understanding, Your Honor, is that there are rules where if the defense counsel, if they're trying to speak to employees in civil litigation, for instance. No, I'm talking criminal case. It's a murder investigation and there's, you know, 30 potential witnesses. And the defense attorney, after the indictment, gets to work and starts interviewing people without the prosecuting attorney there. That's okay, isn't it, in a run-of-the-mill criminal case? That might be, Your Honor, yes. I guess I'm trying to figure out what's the interest of the guard here in making sure no one, defense counsel or the union, doesn't talk to a witness without the guard there. I'm just trying to make sure I get the picture. The fear would be that you could have the representative or the employees essentially pressuring witnesses not to testify, who are also employees of the guard, not to testify again. Are the guard people allowed, the prosecuting attorney allowed, to talk to witnesses without the union there? I mean, insofar as they're not talking about the subject matter of the proceedings, I don't know. No, they are. The guard, the prosecuting attorney, Captain Bedell. Oh, sorry. Of course. I'm going to start investigating. Yes, Your Honor. Yes. And he can do that without the representative or if there's a lawyer, he can do it without them. I think that's correct, Your Honor. How is that justified, that it's a one-way deal? To the extent that they're trying to create the procedures for their own hearings, Your Honor. I mean, that is, again, something that the military disciplinary proceeding is not quite the same thing as a criminal. I get it. I'm just trying to. I thought the rough analogy was to employees of one of the parties. That was the analogy. You're talking, although these are union members, they're employees of the guard, and you don't want your employees to talk without our lawyer being there. It's not a perfect analogy, but I think that's how that. I got it. I think that was the motivating understanding, Your Honors. I get it. But we do urge the court to dismiss or deny the petition for review. All right. And it does deny it to make sure to include appropriate instructions to the authority going forward. Thank you, and the case is submitted.